# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MONIQUE PACHECO,

    Plaintiff,

    v.

POCONO MEDICAL CENTER and VLADIMIR NIKIFOROUK, M.D.,

    Defendants.

NO. 3:16-CV-02461

(JUDGE CAPUTO)

## **MEMORANDUM**

Presently before me are two motions to dismiss (Docs. 8 & 9) Plaintiff Monique Pacheco's ("Plaintiff" or "Ms. Pacheco") Complaint (Doc. 1), filed by Defendants Pocono Medical Center ("PMC") and Vladimir Nikiforouk ("Nikiforouk") (collectively "Defendants").

For the reasons that follow, Defendants' motions will be granted.

## **I. Factual Background**

The facts, as set forth in Ms. Pacheco's Complaint (Doc. 1), are as follows:

Ms. Pacheco was hired by Defendant PMC, a not-for-profit community hospital in East Stroudsburg, Pennsylvania, as a physician recruiter. (*Id.* ¶¶ 8, 12). Three years later, in June 2014, Ms. Pacheco applied and was selected for the position of Practice Administrator, whereby she managed PMC's outpatient practices for vascular surgery, endocrinology, internal medicine, and an immediate care center. (*Id.* ¶ 13). In August 2015, PMC reorganized the Practice Administrator positions. (*Id.* ¶ 17). Ms. Pacheco and the other Practice Administrators were demoted, and their titles were changed to Practice Managers. (*Id.* ¶ 18). As part of the reorganization, PMC created three Practice Administrator positions. (*Id.* ¶ 19). One of the three positions was filled immediately. (*Id.* ¶ 20). In the fall of 2015, Ms. Pacheco applied for the other two Practice Administrator positions, but was not selected for either one. (*Id.* ¶ 21).

In November 2015, Defendant Dr. Vladimir Nikiforouk, chief physician of the obstetrics and gynecology practice, called Ms. Pacheco into his private office at PMC. He

told Ms. Pacheco that he had something very important to tell her. (*Id.* ¶ 22). He proceeded to tell Ms. Pacheco that he was taking a sabbatical to go to Europe for a sex change operation and that he felt liberated telling her. He also told her that when he returned, they could go shopping together. In response, Ms. Pacheco expressed her support for his decision. (*Id.* ¶ 23). Dr. Nikiforouk then advised Ms. Pacheco that he was just joking, and informed her that he had secretly video-recorded their conversation on his iPad. (*Id.* ¶ 24). Dr. Nikiforouk informed Ms. Pacheco that he had video-recorded other employees as well, and that he planned to use the recordings for entertainment purposes at the upcoming PMC holiday party. (*Id.* ¶ 25).

On the evening of January 15, 2016, while Ms. Pacheco was having dinner with her family, Dr. Nikiforouk sent her a text message asking if he could call her. She agreed. Dr. Nikiforouk then called Ms. Pacheco to complain about a medical assistant that had been hired to support him. Specifically, Dr. Nikiforouk indicated that the assistant was an "idiot" and "fucking stupid." (*Id.* ¶ 29). Dr. Nikiforouk then proceeded to ask Ms. Pacheco what the capital of Great Britain was, and when she indicated that she could not hear him clearly because of the loud environment, Dr. Nikiforouk stated: "I cannot believe you don't know the answers to these questions either. This is a simple third grade question. London is the capital. What is the capital of Puerto Rico, I bet you know the answer." (*Id.* ¶ 30). Ms. Pacheco is Puerto Rican. (*Id.* ¶ 31). She refused to answer Dr. Nikiforouk's questions regarding Great Britain and Puerto Rico. (*Id.* ¶ 32). Dr. Nikiforouk resumed his disparagement of the medical assistant, stating again that the assistant was "fucking stupid" and an Italian who does not know the capital of Italy. Dr. Nikiforouk told Ms. Pacheco that he had not been included in the hiring process and was going to make the assistant miserable so that she would want to quit, just like he did to "Michelle, the cute one." (*Id.* ¶ 33).

Throughout her employment with PMC, Ms. Pacheco lodged multiple complaints regarding what she believed to be inappropriate workplace behavior, (*Id.* ¶ 34), namely:

    a.    In or around spring of 2013, Ms. Pacheco reported to Michael Klutch, PMC

2

in-house counsel, that she was uncomfortable with comments expressed by Ms. Lansdowne regarding Plaintiff's breasts.

b. In or about September 2015, Ms. Pacheco reported to Karen Giaquinto, PMC Director of Human Resources, that she was uncomfortable with the flirtatious behavior between Mr. Louis, PMC's Vice President of Physician Practices, and Ms. Landis, PMC s Director of Operations.

c. In or about September 2015, Ms. Pacheco told Ms. Giaquinto that Mr. Louis was hugging and kissing the front-end registration representative, Anais Ruiz.

d. In or about November 2015, Ms. Pacheco told Ms. Giaquinto she had received a complaint from midwife Heather Gosch, who worked in the OB/GYN Group that Ms. Pacheco managed, regarding inappropriate comments made by Dr. Nikiforouk relating to bias/hatred of women, disparaging comments about Americans, and Dr. Nikiforouk's practice of video recording employees without their knowledge.

e. Upon information and belief, other than Ms. Giaquinto replying that she did not have time to discuss the complaint and would look into it later, no further action or follow-up occurred regarding the complaint.

f. In or about October 2015, Ms. Pacheco told John Thompson, the Practice Administrator, that Mr. Louis asked one of Ms. Pacheco's direct reports, Rachel Torres-Fernandez, out on a date.

g. In or about November 2015, Ms. Pacheco reported Dr. Nikiforouk's illegal video recording of their conversation without her permission to Ms. Landis and Mr. Thompson.

h. In or about January 16, 2016, Ms. Pacheco informed Ms. Landis and Mr. Thompson about Dr. Nikiforouk's phone call one day prior in which he referred to the national origin of Plaintiff and a medical assistant, repeatedly used profanity while yelling at Plaintiff, and promised to make the assistant so miserable she would want to quit her employment.

3

> i. In or about April 2016, Ms. Pacheco twice reported her concerns regarding Dr. Nikiforouk to Heidi Signore who became Director of Operations after Ms. Landis resigned. Ms. Signore failed to respond.

At some point, the Complaint fails to specify when, Mr. Louis, PMC's Vice President of Physician Practices, held a meeting with the Practice Managers to confront them about the complaints some of the managers had made to Human Resources about Mr. Louis' conduct at work. At the meeting, Mr. Louis acted in a bullying and condescending manner. He informed the Managers that he was particularly angry about the complaint that he had flirted with Ms. Landis because he did not want his wife to find out about it. (*Id.* ¶ 35). Mr. Louis advised Lisa Perry, Director of Business Development, that he knew who made the complaint and that he would take action to ensure that "she is gone." When he was advised by Ms. Perry that retaliatory actions were prohibited, he replied that he was creative at coming up with ways to terminate people. (*Id.* ¶ 36).

On the morning of May 9, 2016, Dr. Nikiforouk went to Ms. Pacheco's office and stated in a snide tone, "So I hear people are being laid off at 3:00 PM today." Ms. Pacheco, as well as Ms. Perry, were terminated later that day. (*Id.* ¶¶ 38, 40).

Ms. Pacheco was told that her termination was due to budget concerns and that the decision had been in the works for months. (*Id*. ¶ 41). However, PMC was still hiring new Practice Managers as recently as six weeks prior to Ms. Pacheco's termination. (*Id.* ¶¶ 42, 43). On June 28, 2016, PMC announced that it had hired a new Practice Manager for the OB/GYN, UroGYN, Perinatology, GYN, Breast Surgery, & Neonatology practices, which is the very same position previously held by Ms. Pacheco when she was terminated on May 9th. (*Id.* ¶¶ 38, 44). As of July 2016, PMC employed the same number of Practice Managers that had been in place prior to Ms. Pacheco's termination in May. (*Id.* ¶ 45).

In light of the foregoing, Ms. Pacheco instituted the instant action, alleging two claims: (1) retaliation under Title VII of Civil Rights Act of 1964, as amended 1991, 42 U.S.C. § 2000e, *et seq*., against Defendant Pocono Medical Center, and; (2) violation of the Pennsylvania Wire Tapping and Electronic Surveillance Control Act, 18 Pa. C.S.A. § 5725,

and invasion of privacy against Defendant Dr. Vladimir Nikiforouk. (*See* Doc. 1).

On December 29, 2016, Dr. Nikiforouk filed a 12(b)(1) motion to dismiss the state law claim against him. (Doc. 8). On January 3, 2017, Defendant PMC filed a 12(b)(6) motion to dismiss Ms. Pacheco's Title VII retaliation claim. (Doc. 10). The motions have been fully briefed (Docs. 9, 11, 13, 14, 15, 16), and are now ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

5

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id*. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### III. Discussion

1.  **Defendant PMC's Motion to Dismiss for Failure to State a Claim**

Defendant PMC first moves to dismiss Count I of the Complaint, which alleges that PMC subjected Ms. Pacheco to adverse action when she engaged in protected activity by complaining about discrimination based on national origin, sex, and hostile working conditions, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e–2000e–17 ("Title VII"). Defendant PMC argues that Count I should be dismissed for failure to state a cognizable cause of action because, among others, "[n]one of the [workplace] complaints . . . constitute Title VII protected activity." (Doc. 10, at 3).

In order to plead a retaliation claim in violation of Title VII, a plaintiff must allege facts showing that: (1) she was engaged in a protected activity; (2) she has suffered an adverse employment action based on exercise of the protected activity; and (3) there is a causal link between the protected activity and the adverse employment action. *Hussein v. UPMC Mercy Hospital*, 466 Fed.Appx. 108, 111-12 (3d Cir. 2012) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006)). For the purposes of the first prong of a *prima facie* case of retaliation, protected "opposition" activity includes not only an employee's filing of formal charges of discrimination against an employer but also "informal protests of discriminatory employment practices, including making complaints to management." *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006) (citation omitted).

The complaint must also allege that the "opposition" was to discrimination based on a protected category, such as age or race. *See Slagle v. Cnty. of Clarion*, 435 F.3d 262, 266-67 (3d Cir. 2006). Furthermore, although a plaintiff in a retaliation case "need not prove the merits of the underlying discrimination complaint," she must have "act[ed] under a good faith, reasonable belief that a violation existed." *Moore*, 461 F.3d at 344 (quoting *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996)). This standard requires an "objectively reasonable belief" that the activity the plaintiff opposed constituted unlawful

discrimination under the relevant statute. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 322 (3d Cir. 2008) (quoting *Moore*, 461 F.3d at 341).

Here, I find that the workplace conduct Ms. Pacheco opposed, as presently alleged, cannot be said to constitute discrimination under Title VII; thus, Ms. Pacheco's opposition does not constitute a protected activity.

I will now assess the complained-about conduct in turn.

**A.    In or about September 2015, Ms. Pacheco reported to Karen Giaquinto, PMC Director of Human Resources, that she was uncomfortable with the flirtatious behavior between Mr. Louis and Ms. Landis. (Doc. 1, ¶ 34).**

"Title VII's anti-retaliation provisions protect employees who oppose employment practices made illegal by Title VII." *Brangman v. Astrazeneca,LP*, 952 F.Supp.2d 710, 721 (E. D. Pa. 2013) (citation omitted). "The Plaintiff must therefore be opposing employment practices made illegal by Title VII." *Id.* (citation omitted). "[C]ase law has established that opposition to an illegal employment practice must identify the employer and the practice - if not specifically, at least by context." *Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc*., 450 F.3d 130, 135 (3d Cir. 2006).

For example, in *Barber v. CSX Distribution Services*, 68 F.3d 694, 701-02 (3d Cir. 1995), the Third Circuit held that a letter to an employer's Human Resources Department was not protected activity because it did not specifically complain about age discrimination.[1] The letter, which stated that the plaintiff felt that the position was given to a less qualified person, was too vague to constitute opposition to an unlawful employment practice of his employer because it neither "explicitly or implicitly" alleged that a protected characteristic was the basis for the adverse employment action. *Id.* at 702.

In the instant case, Plaintiff alleges that being "uncomfortable" with flirtatious behavior and complaining about such behavior is a protected activity. I disagree. Of course,

---

[1] The Third Circuit has repeatedly held that Title VII and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (2000), are comparable. *See, e.g., Geary v. Visitation of the Blessed Virgin Mary Parish Sch.*,7 F.3d 324, 331 (3d Cir. 1993).

8

complaining about behavior, which may reasonably be construed as constituting sexual harassment and/or hostile work environment, would be a protected activity. Here, however, the above-cited allegations are not indicative of sexual harassment and/or hostile work environment. If the flirtatious behavior was mutual and not unwanted, Ms. Pacheco's allegations would be without merit. As currently alleged, there is no way to infer whether the behavior described was violative, or even arguably violative, of Title VII; the Complaint does not contain even a bare allegation that this particular incident constituted workplace sexual harassment or a hostile work environment. It is just as likely that Ms. Landis initiated the "flirtatious" interaction, or that, though initiated by Mr. Louis, the interaction was welcomed and mutually pursued. There is also no indication that either participant of the "flirtatious behavior" filed a work complaint alleging discrimination or a hostile work environment. As the Supreme Court has held, "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination . . . because of . . . sex. We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S. Ct. 998, 1002 (1998) (internal quotations omitted) (citation omitted).

At a motion to dismiss stage, my duty is to construe the allegations in light most favorable to Plaintiff, but if construction "most favorable light" equates to filling in the blanks, interpreting behaviors beyond what is alleged, reading in-between the lines, and making unsupported inferences, it means that Ms. Pacheco is asking me to state her claims for her. That I cannot do.

If Ms. Pacheco intended to allege that there was a pervasive culture of male supervisors making unwanted sexual advanced towards women at Defendant's facility, she must, at least, say as much and allege so sufficiently enough to state a claim. If Ms. Pacheco intended to allege that Ms. Landis was a victim of sexual harassment, she must at least, again, say as much. If Plaintiff is seeking to advance a hostile work environment claim, she must plausibly allege that the "workplace is permeated with discriminatory

9

intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993). She has not done so; complaints about unprofessional work conduct will not suffice in a Title VII action.

    **B.**    **In or about September 2015, Ms. Pacheco told Ms. Giaquinto that Mr. Louis was hugging and kissing the front-end registration representative, Anais Ruiz. (Doc. 1, ¶ 34).**

I addressed these types of allegations in § A, above.

    **C.**    **In or about October 2015, Ms. Pacheco told John Thompson, the Practice Administrator, that Mr. Louis asked one of Ms. Pacheco's direct reports, Rachel Torres-Fernandez, out on a date. (Doc. 1, ¶ 34)**.

I addressed these types of allegations in § A, above.

    **D.**    **In or about November 2015, Ms. Pacheco told Ms. Giaquinto she had received a complaint from midwife Heather Gosch, who worked in the OB/GYN Group that Ms. Pacheco managed, regarding inappropriate comments made by Dr. Nikiforouk relating to bias/hatred of women, disparaging comments about Americans, and Dr. Nikiforouk's practice of video recording employees without their knowledge. (Doc. 1, ¶ 34).**

As explained further in § 2 of this Memorandum, Ms. Pacheco's complaint about "Dr. Nikiforouk's practice of video recording employees without their knowledge" does not constitute a protected activity under Title VII. Moreover, bare allegations of "inappropriate comments … relating to bias/hatred of women" will not pass the 12(b)(6) muster because they are Ms. Pacheco's conclusory characterization of the comments, rather than an exposition of the comments' substance, context, and nature. The same critique applies to the allegedly "disparaging comments about Americans."

    **E.**    **In or about November 2015, Ms. Pacheco reported Dr. Nikiforouk's illegal video recording of their conversation without her permission to Ms. Landis and Mr. Thompson. (Doc. 1, ¶ 34)**.

10

I addressed these types of allegations in § D, above.

This leaves Ms. Pacheco with only two allegations which may arguably pass the 12(b)(6) muster, that: (1) in or around spring of 2013, Ms. Pacheco reported to Michael Klutch, PMC in-house counsel, that she was uncomfortable with comments expressed by Ms. Lansdowne regarding Plaintiff's breasts, and (2) in or about January 16, 2016, Ms. Pacheco informed Ms. Landis and Mr. Thompson about Dr. Nikiforouk's phone call in which he referred to the national origin of his assistant and that of Ms. Pacheco, repeatedly used profanity while yelling at Ms. Pacheco, and promised to make the assistant so miserable she would want to quit her employment, just like he did to "Michelle, the cute one."[2]

These allegations are not sufficient to state a claim under Title VII, however. The first allegation suffers from a temporal defect because it occurred in 2013 and Ms. Pacheco was not terminated until May 9, 2016. Moreover, Ms. Pacheco does not allege who Ms. Lansdowne is, and fails to specify the nature, context, and content of the comments. The second allegation is also insufficient because, even if construing the allegation in light most favorable to Plaintiff, I cannot find that it plausibly alleges harassment that is so "severe or pervasive" to alter the "terms, conditions, or privileges" of Ms. Pacheco's employment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 2405 (1986). After all, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'" so as to violate Title VII. *Clark County School District v. Breeden*, 532 U.S. 268, 271, 121 S.Ct. 1508, 1509 (2001) (*per curiam*) (citation omitted).

Thus, the Complaint fails to state a *prima facie* case for discrimination under Title VII. It may be true that the above-described conduct constituted "inappropriate workplace behavior" as Ms. Pacheco argues. However, complaining about behavior that is merely inappropriate is not a protected activity under Title VII. The conduct described in the

---

[2] The details of the conversation between Dr. Nikiforouk and Ms. Pacheco are sufficiently alleged in the Complaint in ¶¶ 29-33.

Complaint does not cross the line from "inappropriate" to, even arguably, discriminatory or hostile.

I am cognizant, however, of insidious discrimination and hidden biases, which present themselves in gradual, subtle ways, often through unconscious antagonism, resentment, or domination, but are nevertheless just as damaging as outright and overt discrimination. Because of that, and because this is a civil rights suit, *see Phillips v. Cnty. of Allegheny, 515 F.3d 224, 237* (3d Cir. 2008); *Grayson v. Mayview State Hosp*., 293 F.3d 103, 108 (3d Cir. 2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)), I will grant leave to amend the Complaint to address the above-mentioned deficiencies.

**2.    Defendant Nikiforouk's Motion to Dismiss**

Dr. Nikiforouk next moves to dismiss Count II on the grounds this Court lacks independent subject matter jurisdiction and should decline to exercise supplemental jurisdiction over Ms. Pacheco's Wire Tapping and Electronic Surveillance Control Act, 18 Pa. C.SA. § 5725, state law claim.

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack, such as the one here, "challenges the subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.' " *Id*. (citing *Petruska v. Gannon Univ*., 462 F.3d 294, 302 n.3 (3d Cir. 2006)).

The cause of action against Defendant Nikiforouk is pleaded solely under state law, and the parties are not of diverse citizenship. *See* 28 U.S.C. § 1332(a). If this Court possesses subject matter jurisdiction over the state law claim, then, it must be by virtue of the supplemental jurisdiction statute. *See* 28 U.S.C. § 1367. The presence of the Title VII claim suffices to meet the "original jurisdiction" requirement of the supplemental jurisdiction statute. *See Exxon Mobil Corp. v. Allapattah Servs., Inc*., 545 U.S. 546, 563, 125 S. Ct. 2611, 2623 (2005).

The issue, then, is whether the allegations against Dr. Nikiforouk are "so related to

claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). This portion of the statute incorporates earlier case law concerning so-called "pendent" or "ancillary" jurisdiction. The test requires a finding that (1) "[t]he federal claim must have substance sufficient to confer subject matter jurisdiction on the court '; (2) [t]he state and federal claims must derive from a common nucleus of operative fact"; and (3) "considered without regard to their federal or state character, a plaintiffs' claims are such that he would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130 (1966). The critical issue is "whether state-law claims share a 'common nucleus of operative fact' with the claims that supported the district court's original jurisdiction." *De Asencio v. Tyson Foods, Inc*., 342 F.3d 301, 307-08 (3d Cir. 2003), as amended (Nov. 14, 2003) (quoting *Gibbs*, 383 U.S. at 725). Where that is the case, supplemental jurisdiction promotes "judicial economy, convenience and fairness to litigants." *Id.* (quoting *Gibbs*, 383 U.S. at 726, 86 S. Ct. 1130).

Here, there is little overlap between the facts at the core of the two claims: the federal claim alleging Title VII retaliation and the alleged illegal recording of a conversation between Ms. Pacheco and Dr. Nikiforouk. The injury at the core of these claims is not unitary, either. Most notably, the federal claim is alleged only against Defendant PMC, while the state law claim is alleged only against Dr. Nikiforouk, a non-diverse party. Thus, Ms. Pacheco is asking this Court to exercise supplemental party jurisdiction over a non-diverse claim, which does not share a common nucleus of operative fact with the federal claim.

Moreover, Ms. Pacheco does not need to allege, or prove, or even successfully litigate, that Dr. Nikiforouk violated Pennsylvania's wiretapping laws to win on her Title VII discrimination claim. As I already mentioned, while the videotaping of Dr. Nikiforouk and Ms. Pacheco's private conversation is arguably a violation of Pennsylvania state law, it is not a violation of Title VII, nor is termination of Plaintiff's employment following her complaints about it. This is because Ms. Pacheco was not engaged in a Title VII protected activity when she lodged her complaints about Dr. Nikiforouk's allegedly illicit recordings. As I have

already said, Title VII prohibits employment discrimination based on race, color, religion, sex and national origin. It does not cover complaints about violations of state wiretapping laws. Thus, unless specifically tied to Title VII's protections against discrimination, any claims of violations of state wiretapping laws would be *precluded* from Title VII litigation.

In sum, I find that the facts underlying the two claims are not so closely intertwined that the case may be said to constitute a single case or controversy, such that supplemental jurisdiction is appropriate. The case is still at the pleading stage, with no discovery underway, and nothing is gained or lost, nor are the goals of judicial economy, convenience and fairness to litigants undermined by declining to exercise supplemental jurisdiction over Ms. Pacheco's wiretapping claim.

### IV. Conclusion

For the above-stated reasons, Defendants' motions (Docs. 8 & 9) will be granted. However, I will grant leave to file an Amended Complaint, curing the deficient Title VII retaliation claim in Count I. Count II, alleging violations of state law, will be dismissed without prejudice to Plaintiff pursuing the claim in an appropriate state court.

An appropriate order follows.


August 16, 2017                                                     /s/ A. Richard Caputo
Date                                                                     A. Richard Caputo
                                                                                      United States District Judge