# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MONIQUE PACHECO,

   Plaintiff,

       v.

POCONO MEDICAL CENTER,

   Defendant.

NO. 3:16-CV-02461

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me is the Motion to Dismiss the Amended Complaint (Doc. 21) filed by Defendant Pocono Medical Center ("PMC"). Plaintiff Monique Pacheco ("Ms. Pacheco") alleges that PMC retaliated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.*, after she reported incidents of sexual harassment and a hostile work environment. PMC seeks dismissal of the Amended Complaint on the basis that Ms. Pacheco fails to allege that she engaged in any activity protected by Title VII or the PHRA. Because Ms. Pacheco pleads sufficient facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of her Title VII and PHRA claims, PMC's motion to dismiss will be denied.

## I. Background

The facts as alleged in the Amended Complaint are as follows:

Ms. Pacheco was hired by PMC as a physician recruiter in November 2011. (*See* Doc. 21, ¶ 11). In June 2014, Ms. Pacheco applied for and was selected by PCM as a Practice Administrator. (*See id.* at ¶ 12). PMC hired Lamont Louis ("Mr. Louis") in September 2014, and Pacheco began to report to him at this time. (*See id.* at ¶¶ 13-14). Thereafter, PMC hired Michele Landis ("Ms. Landis") as Director of Operations. (*See id.* at ¶ 15). After Ms. Landis was hired, Ms. Pacheco and the other Practice

Administrators reported to Ms. Landis and Ms. Landis reported to Mr. Louis. (*See id.*).

In July 2015, Pacheco complained to Karen Giaquinto ("Ms. Giaquinto"), PMC's Director of Human Resources, that Mr. Louis had a practice of hiring and/or favoring individuals that were young and pretty. (*See id.* at ¶ 16). The following month, PMC demoted all Practice Administrators to Practice Managers and changed the responsibilities for those positions. (*See id.* at ¶ 17). As part of this restructuring, Ms. Pacheco was reassigned to manage new and more demanding practice groups, including the OB/GYN practice. (*See id.* at ¶ 18).

In September 2015, Ms. Pacheco reported to Ms. Giaquinto that Mr. Louis was engaged in "sexual behavior" in the workplace. (*See id.* at ¶ 21). Specifically, Ms. Pacheco reported that Mr. Louis was being sexually flirtatious with Ms. Landis in her presence and was hugging and kissing Anais Ruiz ("Ms. Ruiz") in front of her. (*See id.*). Additionally, Ms. Pacheco reported that Mr. Louis asked one of her direct reports, Rachel Torres-Fernandez ("Ms. Torres-Fernandez"), on a date after she complained to Ms. Pacheco about this unwanted advance, which Ms. Torres-Fernandez felt obligated to accept. (*See id.*). In response to those reports, Ms. Giaquinto advised Ms. Pacheco to keep her head down and not to say anything. (*See id.* at ¶ 22). Ms. Pacheco also informed Practice Administrator John Thompson ("Mr. Thompson") of the unwelcome advance by Mr. Louis towards Ms. Torres-Fernandez and Ms. Torres-Fernandez's perception of that advance as sexual harassment. (*See id.* at ¶ 23).

Around that time, Mr. Louis held a meeting with Ms. Pacheco and the other Practice Managers where he indicated he was angry about the complaint that he had flirted with Ms. Landis because of concern that his wife would learn about it. (*See id.* at ¶ 26). Mr. Louis advised Lisa Perry ("Ms. Perry"), the Director of Business Development, that he knew who made this complaint and that he would take action to ensure she was gone. (*See id.* at ¶ 27).

2

Ms. Pacheco applied for two vacant positions in fall 2015. (*See id*. at ¶ 28). She did not get either position. (*See id*.).

In November 2015, Dr. Vladimir Nikiforouk ("Dr. Nikiforouk"), the Chief Physician of the OB/GYN practice managed by Ms. Pacheco, called her into his office for a private conversation, during which he revealed that he was going away for a sex change operation. (*See id*. at ¶¶ 29-31). Dr. Nikiforouk then informed Ms. Pacheco that he was joking, and he told her that he had secretly video-recorded their conversation. (*See id*. at ¶ 32). Ms. Pacheco complained about Dr. Nikiforouk's conduct in recording that conversation to Mr. Thompson and Ms. Landis. (*See id*. at ¶ 40).

Also in November 2015, midwife Heather Gosch ("Ms. Gosch") complained to Ms. Pacheco that "Dr. Nikiforouk made disparaging comments about women in front of employees in the physician dining room. Specifically, Dr. Nikiforouk stated that he hated women." (*Id*. at ¶ 42). Ms. Gosch additionally complained to Ms. Pacheco about Dr. Nikiforouk's practice of video recording employees without their knowledge of his plans to undergo a sex change operation. (*See id*. at ¶ 43). Shannon Wilson ("Ms. Wilson") was present during that meeting between Ms. Pacheco and Ms. Gosch, and Ms. Wilson confirmed that she heard Dr. Nikiforouk make offensive statements about women and that he had also recorded her reaction to the story about having a sex change. (*See id*. at ¶ 45). Ms. Gosch requested Ms. Pacheco to report Dr. Nikiforouk's comments. (*See id*. at ¶ 46). Ms. Pacheco reported those complaints to Ms. Giaquinto. (*See id*. at ¶ 49).

On January 15, 2016, Ms. Pacheco received a text message from Dr. Nikiforouk asking her to give him a call while she was having dinner. (*See id*. at ¶ 51). Ms. Pacheco agreed and called Dr. Nikiforouk who immediately complained about a female medical assistant. (*See id*. at ¶ 52). During that conversation, Dr. Nikiforouk referred to the assistant as an "idiot" and "a fucking stupid Italian." (*Id*. at ¶ 53). Dr. Nikiforouk further lamented that the assistant would not know the capital of Italy if

3

he asked her. (*See id.*). Dr. Nikiforouk then proceeded to ask Ms. Pacheco what the capital of Great Britain was, and when she indicated that she could not hear him clearly because of the loud environment, Dr. Nikiforouk stated: "I cannot believe you don't know the answers to these questions either. This is a simple third grade question. London is the capital. What is the capital of Puerto Rico, I bet you know the answer." (*Id*. ¶ 54). Ms. Pacheco is Puerto Rican. (*See id*. ¶ 55). She refused to answer Dr. Nikiforouk's questions regarding Great Britain and Puerto Rico, at which time he referred to her as a "fucking idiot." (*Id*. ¶ 54). Dr. Nikiforouk continued his disparagement of the medical assistant, stating again that the assistant was "fucking stupid" and since he had not been included in the hiring process, he was going to make the assistant miserable so that she would want to quit, just like he did to "Michelle, the cute one." (*Id*. ¶ 56).

The next day, Ms. Pacheco informed Ms. Landis and Mr. Thompson about her phone call with Dr. Nikiforouk. (*See id*. at ¶ 57). Ms. Landis instructed Ms. Pacheco to put those concerns in an email, which she did. (*See id*. at ¶ 58). Ms. Landis resigned her employment with PMC a few months later. (*See id*. at ¶ 59).

Thereafter, Ms. Pacheco reported her concerns of Dr. Nikiforouk's conduct to Heidi Signore ("Ms. Signore"), the new Director of Operations. (*See id*. at ¶ 60). Ms. Pacheco asked Ms. Signore about the status of the written complaint she had made to Ms. Landis, but Ms. Signore did not respond to that inquiry. (*See id*. at ¶ 61).

On the morning of May 9, 2016, Dr. Nikiforouk went to Ms. Pacheco's office and stated in a malicious tone, "So I hear people are being laid off at 3:00 PM today." (*Id*. at ¶ 64). Ms. Pacheco was terminated later that day. (*See id*. at ¶ 67).

Ms. Pacheco was told that her termination was due to budget concerns and that the decision had been in the works for months. (*See id*. at ¶ 68). However, PMC was still hiring new Practice Managers as recently as six weeks prior to Ms. Pacheco's termination. (*See id*. at ¶ 69). On June 28, 2016, PMC announced that it had hired a new Practice Manager for the OB/GYN, UroGYN, Perinatology, GYN, Breast

4

Surgery, & Neonatology practices, which is the very same position previously held by Ms. Pacheco when she was terminated on May 9, 2016. (*See id*. at ¶ 71). As of July 2016, PMC employed the same number of Practice Managers that had been in place prior to Ms. Pacheco's termination. (*See id*. at ¶ 72).

Based on the foregoing, Ms. Pacheco commenced litigation, (*see* Doc. 1, *generally*),[1] and she subsequently filed the Amended Complaint asserting claims against PMC for retaliation in violation of Title VII and the PHRA. (*See* Doc. 19, *generally*). On September 14, 2017, PMC filed its motion to dismiss Ms. Pacheco's Amended Complaint. (*See* Doc. 21, *generally*). The motion to dismiss has now been fully briefed and is ripe for disposition.

## II. Discussion

**A.     Legal Standard.**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "Under the 'notice pleading' standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014) (quoting Fed. R. Civ. P. 8(a)(2)).

When resolving a Rule 12(b)(6) motion, "a court must consider no more than whether the complaint establishes 'enough facts to raise a reasonable expectation that

---

[1] In her original complaint, Ms. Pacheco asserted a Title VII retaliation claim against PMC and a supplemental state law claim for violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S.A. § 5725, against Dr. Nikiforouk. (*See* Doc. 1, *generally*). On motions by PMC and Dr. Nikoforouk, I dismissed the Title VII retaliation claim with leave to amend and dismissed the state law claim without prejudice to Ms. Pacheco pursuing that claim against Dr. Nikiforouk in state court. (*See* Docs. 17-18, *generally*).

5

discovery will reveal evidence of the necessary elements' of the cause of action." *Trzaska v. L'Oreal USA, Inc.*, 865 F. 3d 155, 162 (3d Cir. 2017) (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)). In reviewing the sufficiency of a complaint, a court must take three steps: (1) identify the elements of the claim; (2) identify conclusions that are not entitled to the assumption of truth; and (3) assume the veracity of the well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief. *See Connelly*, 809 F.3d at 787 (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

**B.    Title VII.**[2]

Title VII makes it an "unlawful employment practice for an employer . . . to discriminate against any individual . . . , because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see also* 42 U.S.C. § 2000e-2(m) ("[e]xcept as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."). A plaintiff bringing a Title VII retaliation claim can withstand a "motion to dismiss if she pleads sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action." *Connelly*,

---

[2]    Because Title VII and the PHRA are interpreted coextensively, my discussion of Title VII applies equally to the PHRA. *See*, *e.g.*, *Atkinson v. Lafayette College*, 460 F.3d 447, 454 n.6 (3d Cir. 2006); *Fogleman v. Mercy Hosp.*, 283 F.3d 561, 567 (3d Cir. 2002).

6

809 F.3d at 789 (citing *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 201 (3d Cir. 1994)).

Title VII, for purposes relevant here, protects "those who oppose discrimination made unlawful by Title VII." *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006). However,

> Not every complaint or report entitles its author to protection from retaliation under Title VII. Rather, only complaints about discrimination prohibited by Title VII - that is, discrimination on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2 - constitute "protected activity." Thus, for a complaint to amount to "protected activity," it must implicate an employment practice made illegal by Title VII. General complaints of unfair treatment will not suffice.

*Davis v. City of Newark*, 417 F. App'x 201, 202-03 (3d Cir. 2011) (internal citations omitted). While a plaintiff in a retaliation case "need not prove the merits of the underlying discrimination complaint," she must have "act[ed] under a good faith, reasonable belief that a violation existed." *Moore*, 461 F.3d at 344 (quoting *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir.1996)). "This standard requires an objectively reasonable belief that the activity the plaintiff opposed constituted unlawful discrimination" under Title VII. *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193-94 (3d Cir. 2015) (citation omitted). As such, "a protected activity can be a complaint about a hostile work environment, and the underlying conduct itself does not need to be actionable." *Kargbo v. Philadelphia Corp. for Aging*, 16 F. Supp. 3d 512, 532 (E.D. Pa. 2014). "Title VII's whistle-blower protection is not limited to those who blow the whistle on their own mistreatment or on the mistreatment of their own race, sex, or other protected classs." *Moore*, 461 F.3d at 342.

PMC moves to dismiss Ms. Pacheco's claim under Title VII on the basis that the incidents referenced in the Amended Complaint "do not constitute 'protected activity' under Title VII and consequently Plaintiff cannot meet the first element of a *prima facie* retaliation case." (Doc. 22, 6). According to PMC, the Amended

Complaint suffers from similar defects to those that I identified in dismissing Ms. Pacheco's original complaint. (*See id*. at 6-10). In that opinion, I found, *inter alia*, that the allegations in the complaint failed to implicate "complain[ts] about behavior[ ] which may reasonably be construed as constituting sexual harassment and/or hostile work environment . . . ." (Doc. 17, 9). I further noted that if Ms. Pacheco intended to allege that she reported instances of sexual harassment, of a hostile work environment, or of a culture permeated by unwanted sexual advances, she "must say as much and allege so sufficiently enough to state a claim." (*Id*.). Similarly, I stated that Ms. Pacheco's "bare allegations" of comments "relating to bias/hatred of women" failed to pass the "12(b)(6) muster because they are Ms. Pacheco's conclusory characterization of the comments, rather than an exposition of the comments' substance, context, and nature." (*Id*. at 10). Accordingly, although I concluded that Ms. Pacheco failed to properly plead the first element of her Title VII retaliation claim, she was granted leave to file an amended pleading. (*See id*. at 7-12).

The Amended Complaint cures the deficiencies identified above. (*See* Doc. 19, *generally*). For example, Ms. Pacheco now pleads that she reported the events by which Mr. Louis asked Ms. Torres-Fernandez on a date, which Ms. Torres-Fernandez viewed as an unwanted and unwelcome sexual advance. (*See id*. at ¶¶ 21, 23). These allegations of Mr. Louis' behavior and Ms. Torres-Fernandez's reaction to same as well as the claim that this conduct was unwanted are accepted as true for purposes of the instant motion. *See Connelly*, 809 F.3d at 790 (the plaintiff's "factual allegations describing Manning's behavior and her reaction to him, along with her allegation that his threatened physical contact was 'unwanted,' are accepted as true."). The Amended Complaint also alleges that Ms. Pacheco reported that Mr. Louis' conduct created a hostile work environment for female employees as a result of his engaging in other "sexual behavior", such as being sexually flirtatious and hugging/kissing an employee. (Doc. 19, ¶ 21). Ms. Pacheco further avers that she reported that Dr. Nikiforouk created a sexually hostile work environment when he video-recorded at least three

8

female employees' reactions to Dr. Nikiforouk's false story that he intended to pursue a sex change operation. (*See* Doc. 19, ¶¶ 30-40, 43-47). Ms. Pacheco also claims that she reported Dr. Nikiforouk's specific statement to Ms. Gosch that "he hated women," which Ms. Gosch found "offensive and demonstrative of bias towards women." (*Id*. at ¶ 42). This allegation of Dr. Nikiforouk's actual comment to Ms. Gosch made "in the physician dining room" is unlike the averments in the original complaint whereby Ms. Pacheco merely provided a "conclusory characterization" of comments relating to Dr. Nikiforouk's bias towards women. (*Cf. id*. at ¶ 42, *with* Doc. 1, ¶ 34(d)). Other allegations of a hostile work environment at PMC include Ms. Pacheco's allegation that Dr. Nikiforouk berated her on a telephone conversation in January 2016 during which he repeatedly insulted her and a female assistant and he would make the assistant so miserable that she would quit, like he did to another female employee. (*See* Doc. 19, ¶¶ 51-56).

Given the foregoing, the Amended Complaint sufficiently pleads that Ms. Pacheco engaged in activity protected by Title VII. In that regard, Ms. Pacheco has adequately pled facts showing that she had "an objectively reasonable belief that the activity [s]he oppose[d] constitute[d] unlawful discrimination under Title VII." *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 322 (3d Cir. 2008) (internal quotations omitted). As made clear by the Third Circuit, "even if one believed it 'unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits,' it still must be said that [Ms. Pacheco] - under a favorable standard of review - has raised a reasonable inference that discovery will reveal evidence of the elements necessary to establish her claims." *Connelly*, 809 F.3d at 793. And, finding that the Amended Complaint provides adequate factual support that PMC took adverse action against her, *i.e.*, her termination, and that a casual link exists between her reports of sexual harassment/hostile work environment and her termination, (*see* Doc. 19, *generally*), Ms. Pacheco will be permitted to proceed with her Title VII and PHRA claims.

9

### III. Conclusion

For the above stated reasons, PMC's motion to dismiss the Amended Complaint will be denied.

An appropriate order follows.

January 23, 2018  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge